UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

EQT PRODUCTION CO., )
 )
   Plaintiff, )
 ) No. 6:15-CV-146-REW-EBA
v. )
 )
VORYS, SATER, SEYMOUR AND ) OPINION & ORDER
PEASE, LLP, et al., )
 )
   Defendants. )

\*\*\* \*\*\* \*\*\* \*\*\*

The Court previously ordered briefing on issues related to subject-matter jurisdiction. *See* DE #90. Specifically, the Court required clarification concerning the citizenship(s) of the two Defendants: Vorys, Sater, Seymour and Pease, LLP (Vorys), and John Keller. *See id.* EQT Production Co. (EQT), a citizen of Pennsylvania, DE #1, at ¶ 1, summarily responded. *See* DE #101. Though Defendants had the opportunity to address the issues, *see* DE #90, at 2, neither did. The topics are, therefore, ripe for consideration.

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between," as relevant here, "citizens of different States." 28 U.S.C. § 1332(a)(1); *see also* U.S. Const. Art. III § 2 ("The judicial Power shall extend . . . to Controversies . . . between Citizens of different States[.]"). Courts refer to this concept as "diversity jurisdiction," a form of subject-matter jurisdiction in a case. *See Grupo Dataflux v. Atlas Global Grp., LP*, 124 S. Ct. 1920, 1925-26 (2004); *see also* DE #1, at ¶ 4 (EQT asserting jurisdiction only under § 1332).

Diversity jurisdiction "require[s] complete diversity of citizenship," *i.e.*, "the citizenship of each plaintiff" must be "diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 117 S. Ct. 467, 472 (1996). Thus, phrased another way, for diversity to exist, "no plaintiff" can be "a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). "[T]he state of facts that existed at the time of filing" defines citizenship, in context. *Grupo Dataflux*, 124 S. Ct. at 1924. Complete diversity is a statutory, not constitutional, requirement. *Owen Equip. & Erecting Co. v. Kroger*, 98 S. Ct. 2396, 2402 n.13 (1978).

Importantly, "Federal courts are courts of limited jurisdiction," and "the burden of establishing" a jurisdictional basis "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994). Here, the burden is EQT's, as a plaintiff filing directly in federal court. *See Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir. 2015). The Court, no party questions, has an omnipresent "duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."). As to EQT's observations at DE #101, ¶ 3, the "consent of parties cannot give the courts of the United States jurisdiction." *Pittsburgh, C. & St. L.R. Co. v. Ramsey*, 89 U.S. (22 Wall.) 322, 328 (1874); *see also Watson v. Cartee*, 817 F.3d 299, 302-03 (6th Cir. 2016) ("[P]arties cannot waive the requirement of subject matter jurisdiction.").

True, as EQT points out, *see* DE #101, at ¶ 4, Judge Bunning did previously state that the Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332. *See* DE #81, at 1-2. However, the statement was conclusory and unreasoned, the topic was not at issue in the briefing, and the Court undoubtedly has inherent authority "to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *see also, e.g.*, *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case."). Facial deficiencies in the jurisdictional record required the Court to order clarification on the foundational question of whether the case can go forward under § 1332. The show-cause order, DE #90, decried the specific problems and warned the parties to address all implicated issues and submit appropriate proof or, on failure, face dismissal.

First, EQT's deficient jurisdictional allegations as to Keller are a self-sufficient basis for dismissal. In the Complaint, EQT merely alleged that Keller "resides" in Ohio. *See* DE #1, at ¶ 3. Keller disagreed. *See* DE #6, at ¶ 3. A later pleading, DE #23, at ¶¶ 1-2, cast him as an Arizona resident. In any event, residence, for § 1332 purposes, is not synonymous with citizenship, which is a function of domicile. *See, e.g.*, *Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 109 S. Ct. 1597, 1608 (1989). Simply put, "one can reside in one place but be domiciled in another[.]" *Id.*

EQT's show-cause response did not cure the problem. All EQT added is that, at the time of Complaint filing, Keller "did not reside in Pennsylvania" and that, thus, he

"was not domiciled in Pennsylvania for purposes of diversity jurisdiction." DE #101, at ¶ 10; *see also* DE #101-1 (expressing confusion whether Keller "still resided" in Ohio or possibly had "moved to Arizona"). The lawyers all seem to inaccurately equate residence and domicile. The concepts are distinct; a party can have multiple residences, yet only one domicile, topics demanding exploration that EQT declined to mine. *See Holyfield*, 109 S. Ct. at 1608; *Edick v. Poznanski*, 6 F. Supp. 2d 666, 669-70 (W.D. Mich. 1998). Further, merely identifying a Commonwealth in which Keller was *not* a citizen is insufficient for § 1332 purposes. In the Sixth Circuit's own words: in assessing diversity, "the federal court needs to know the citizenship of each" party. *See Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). EQT thus failed in its duty to affirmatively pinpoint Keller's specific citizenship(s). *See id.*; *see also, e.g.*, *Great S. Fire Proof Hotel Co. v. Jones*, 20 S. Ct. 690, 691-92 (1900) (requiring "the necessary citizenship [to] affirmatively appear[] in the pleadings or elsewhere in the record"); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001); *McClelland v. Wal-Mart Stores E., LP*, No. 06-12811-BC, 2007 WL 844634, at *1 (E.D. Mich. Mar. 16, 2007). The Court dismisses the case independently on this basis.

As to Vorys, an LLP carries the citizenship(s) of each partner—a principle no party disputes. *See, e.g.*, *V & M Star*, 596 F.3d at 355-56; *Carden v. Arkoma Assocs.*, 110 S. Ct. 1015, 1021 (1990); *Morson v. Kreindler & Kreindler, LLP*, 616 F. Supp. 2d 171, 172 (D. Mass. 2009); *Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 11 F. Supp. 2d 449, 451-52 (S.D.N.Y. 1998); *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165, 176 (D. Mass. 1997). EQT's Complaint allegations—that Vorys is "an Ohio limited

liability partnership with its principal place of business" in Ohio, *see* DE #1, at ¶ 2; *see also* DE #6, at ¶ 2—thus were facially insufficient under pellucid § 1332 law.

In the show-cause response, EQT alleged that, at the time of Complaint filing (August 17, 2015), Vorys had "one attorney who was domiciled in Pennsylvania with the title of a 'Partner,' but that individual—Kevin Gormly—was a 'non-equity partner' who had no 'ownership or profits' interest in Vorys." DE #101, at ¶ 8; *see also* DE #101-1 (Vorys's counsel confirming that "there was one listed partner at the Pittsburgh office in August, 2015").[1] If Gormly's citizenship (as a partner and then-domiciliary of Pennsylvania) is imputed to Vorys, the Court would lack diversity jurisdiction because Vorys and EQT would share Pennsylvania citizenship. *See also* DE #1, at ¶ 1.

The Court, on full consideration, holds that Gormly's (an LLP non-equity partner) citizenship counts, for § 1332 purposes, as would any other partner's, depriving the Court of subject-matter jurisdiction in this case—a controversy between, at a minimum, two Pennsylvania citizens. *Carden* set the guideposts:

---

[1] Glossing over jurisdiction as it has from the jump, EQT eschews discussion of the legal status or standing of a "non-equity partner" under Pennsylvania law. [EQT, foundationally, identifies no analytical relevance to that question and declines to even attempt to select *which* State's law may be applicable to probing Vorys's internal structure or defining the parameters of partnership. Pennsylvania's, as Gormly's domicile? Ohio's, *see* DE #1, at ¶ 2? Kentucky's, as forum state? EQT also provides none of Vorys's formational paperwork, legal or tax documents, or the like.] The issues are debatable, at the very least. *See, e.g.*, *In re LaBrum & Doak, LLP*, 225 B.R. 93, 103-04 (Bankr. E.D. Pa. 1998) (contrasting two defendants, who "were never partners," with another defendant, who was a "non-equity partner"); *In re Roche*, 582 B.R. 632, 638 (Bankr. W.D. Pa. 2018) (providing general overview of Pennsylvania partnership law). Given EQT's complete lack of substantive briefing, it forfeited any potential, unexplained state-law-based theories. *See, e.g.*, *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331-33 (6th Cir. 2009); *Brenay v. Schartow*, 709 F. App'x 331, 336-37 (6th Cir. 2017); *United States v. Edwards*, No. 2:12-cv-1060, 2014 WL 4928930, at *2 (S.D. Ohio Oct. 1, 2014).

> Arkoma asserts that the Fifth Circuit correctly determined its citizenship solely by reference to the citizenship of its general partners, without regard to the citizenship of its limited partners. Only the general partners, it points out, manage the assets, control the litigation, and bear the risk of liability for the limited partnership's debts, and, more broadly, have exclusive and complete management and control of the operations of the partnership. This approach of looking to the citizenship of only some of the members of the artificial entity finds even less support in our precedent than looking to the State of organization . . . . We have never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members. No doubt some members of the joint stock company in *Chapman*, the labor union in *Bouligny*, and the limited partnership association in *Great Southern* exercised greater control over their respective entities than other members. But such considerations have played no part in our decisions.

110 S. Ct. at 1019-20 (internal quotation marks and citation removed). At bottom, *Carden* "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members." *Id.* at 1021. Instead, diversity "depends on the citizenship of *all* of the members." *Id.* (emphasis added and internal quotation marks removed). [Tellingly, EQT cited *Carden*, a Supreme Court decision, with a "but see" signal in ¶ 8 of DE #101.]

Subsequent cases, from around the country, confirm these foundational principles, including as specifically applied in the context of non-equity partners. *See, e.g.*, *Grupo Dataflux*, 124 S. Ct. at 1923 (describing "the accepted rule that" a partnership "is a citizen of each State . . . of which *any of its partners* is a citizen" (emphasis added)); *SHR Ltd. P'ship v. Braun*, 888 F.2d 455 (6th Cir. 1989) (pre-*Carden*, adopting the view that the citizenship(s) of "*all partners* . . . must be considered for diversity jurisdiction purposes" (emphasis added)); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182-85 (3d Cir. 2008) (holding that "the complete diversity requirement demands that *all partners* be diverse from all parties on the opposing side" and agreeing that the district court lacked

diversity jurisdiction due to one "stateless partner" (emphasis added)); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998) ("*Carden* held that *each and every partner* in a limited partnership had to be diverse in a suit by or against a partnership." (emphasis added)); *Signicast, LLC v. Fireman's Fund Ins. Co.*, 920 F. Supp. 2d 967, 969-70 (E.D. Wis. 2013) ("Fireman's contends, and Signicast does not dispute, that The Pritzker Group is a 'non-equity' general partner of the limited partnership, and that all of the limited partnership's equity is owned by the limited partners. Fireman's further contends that a non-equity partner's citizenship is irrelevant to the citizenship of the limited partnership. However, as previously stated, the rule is that a limited partnership is a citizen of every state of which any partner, general or limited, is a citizen. There are no exceptions to this rule."); *Cerberus Partners, LP v. Gadsby & Hannah*, 976 F. Supp. 119, 121-23 (D.R.I. 1997) (considering the citizenship(s) of "third-tier partners" in the diversity analysis, and citing cases). The Court could find, and EQT identified, no case holding that the citizenship of a non-equity partner does not count in the § 1332 analysis. *See also Clemmons v. Wells Fargo Bank*, *N.A.*, 680 F. App'x 754, 757 (10th Cir. 2017) (analyzing diversity in LLC context, specifically including citizenship of "a non-ownership, non-equity member"). Gormly—held out and named as a law firm partner (indeed, apparently, *the* Pittsburgh Vorys partner)—is rightly counted in the § 1332 citizenship tally as one of "the several persons composing such association." *Carden*, 110 S. Ct. at 1021 (quoting *Great S. Fire Proof Hotel*, 20 S. Ct. at 693); *see also Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (stating, without qualification, that "the members of a partnership a[re] its partners").

The sole case EQT cites in (purported) support is *Morson*, *see* DE #101, at ¶ 8, which discussed the First Circuit's and New York's general approach to partnership law. *Morson*, at least on the relevant issues, is thinly reasoned. After correctly reciting that an LLP carries the citizenship of all partners, *Morson* defined the analysis of "whether an attorney is a partner" *largely via reference to Title VII law*. *See* 616 F. Supp. 2d at 172-73 (citing *Serapion v. Martinez*, 119 F.3d 982, 988 (1st Cir. 1997) (analyzing only whether a "partner should be regarded as an employee for Title VII purposes")).

Even more bizarrely, in a footnote, *Morson* disclaims relevance of *Carden*. *See* 616 F. Supp. 2d at 173 n.2 (stating that *Carden* "does not apply"). With no discussion, *Morson* simply cast *Carden* as a limited partnership case and ignored it as to a limited liability partnership. This is overly facile. The Court finds *Carden*, the lodestar Supreme Court precedent on the issues, quite applicable. *Carden*'s strong anti-internal-examination principles, quoted above, counsel against an inquiry such as *Morson*'s. *See* 110 S. Ct. at 1019-20 (counting *all* partners' citizenships although the at-issue partners could not manage assets, did not bear risk of liability for debts, lacked management authority, and did not control partnership operations); *see also id.* at 1022 ("The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which . . . of their members' citizenship is to be consulted [is a] question[] more readily resolved by legislative prescription than by legal reasoning, and [a] question[] whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction."). The high court has never endorsed transmuting Title VII principles to the threshold subject-

matter jurisdiction inquiry. Categorical treatment of unincorporated entities reflects careful Supreme Court adherence to "the doctrinal wall of *Chapman v. Barney*[.]" *Carden*, 110 S. Ct. at 1018. The Court rejects EQT's unjustified, unreasoned, precedent-free attempt to disregard a non-diverse partner and *Carden* itself.

Instead, under *Carden*, nominal partner status—*i.e.*, status *vel non* as "partner"—is the sockdolager. *See, e.g.*, *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1305-06 (S.D. Fla. 2016) (contrasting the rule that a court "should disregard a nominal party's citizenship" with the bright-line partner / member rule *Carden* adopted); *Little v. Purdue Pharma, LP*, 227 F. Supp. 2d 838, 844 n.7 (S.D. Ohio 2002) (noting that *Carden* requires consideration of the citizenship "of each partner, general, limited, *or otherwise*" (emphasis added)); *Grupo Dataflux*, 124 S. Ct. at 1928-29 (shunning "the dissent's attempt to treat a change in partners like a change in parties" and, concomitantly, rejecting application of a "real party in controversy" test to partnership analysis); *Reisman*, 965 F. Supp. at 176-77; *W. Charleston Lofts III, LLC v. Farina*, No. 2:16-cv-2491-JAD-VCF, 2017 WL 2218310, at *3 (D. Nev. May 19, 2017) (rejecting the argument that the citizenship of "a nominal member of an LLC" does not count in the diversity analysis as "repeatedly rejected" by the Supreme Court and Ninth Circuit (citing cases)). "*But see C.T. Carden v. Arkoma Associates*," DE #101, at ¶ 8, indeed.

EQT, further, failed to adequately allege Vorys's citizenship(s) in another fundamental way: the show-cause response, bafflingly, and despite the Court's explicit instruction to fully clarify Vorys's citizenship(s), did not address the citizenship(s) of *a single other Vorys partner* at the time of Complaint filing, besides Gormly, all of whose citizenship(s) Vorys would share. As with Keller, the Court finds it necessary to reprint

the Sixth Circuit's unambiguous words: "the court needs to know the citizenship of each member of the company." *Delay*, 585 F.3d at 1005; *see also id.* (recounting a prior direction "to submit a jurisdictional statement identifying the citizenship of all of its members"). In DE #90, the Court explicitly cited *V & M Star*, which quotes *Delay* and specifically requires this granular documentation and scrutiny. *See* 596 F.3d at 355-56.

The necessity is logically obvious. Vorys, "one of the largest law firms in the country," *see* Overview, https://www.vorys.com/about-overview.html (last visited Dec. 18, 2018), has offices in Cleveland, Akron (an hour's drive from the Pennsylvania border), and Washington (besides the Pittsburgh office previously mentioned). Any number of partners at such offices, whom EQT conceals from the Court, *could* have had or retained Pennsylvania citizenship in August 2015. *See, e.g.*, *Holyfield*, 109 S. Ct. at 1608 (recognizing that "one can reside in one place but be domiciled in another"); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (rebuffing the notion that a party's "current Kansas mailing address" proves his citizenship because "being a resident isn't the same thing as being a citizen"). EQT had the "duty . . . to put on record the essential jurisdictional facts," *Bd. of Trs. of Mohican Tp. v. Johnson*, 133 F. 524, 524-25 (6th Cir. 1904), and it has not done so. "The requirement to properly plead the states of the parties' citizenship is no mere exaltation of form over substance, but rather is essential to establish subject matter jurisdiction under § 1332(a)." *Novick v. Frank*, No. 16-4189, 2017 WL 4863168, at *1 (6th Cir. June 6, 2017) (Order) (quoting *Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010)); *see also Carden*, 110 S. Ct. at 1022. Because EQT, though alerted to the issue, chose not to affirmatively identify each Vorys partner's citizenship(s), the Court has no ground to find that diversity exists and, thus, dismisses

the case due to this independent deficiency. *See also Great S. Fire Proof Hotel*, 20 S. Ct. at 691-92. When "a federal court is in doubt of its jurisdiction"—and the Court here has such reservations (at the very least)—"it must resolve such doubt in favor of state court jurisdiction." *Dawson v. Fidelity & Guarantee Ins. Co.*, 561 F. Supp. 2d 914, 916 (N.D. Ohio 2008); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Any doubt regarding jurisdiction should be resolved in favor of the states."); *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (expressing general principle in removal context).[2]

As a concluding matter, EQT states no particular basis for its cursory requests for the Court to "re-open discovery" on the jurisdictional issues. *See* DE #101, at ¶¶ 9, 11. No one digs footers at a housewarming party; EQT's efforts at discovery, three weeks before the final pretrial, come far too late. The "scope of discovery is within the sound discretion of the trial court," and a "ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). EQT—indeed, any actor taking a cursory glance at the Complaint—should have been on notice, in August 2015, that the diversity allegations in this case were defective. EQT ultimately had **over 18 months** of fact discovery to uncover any proof it thought necessary to support the jurisdictional

---

[2] The Court sees (and EQT identifies) no reason why the Sixth Circuit's jurisprudence on this point would not apply with equal force in the context of a (purported) diversity case filed directly in federal court. Pervasive concerns regarding the Court's limited jurisdiction similarly pertain. Depriving a state court of a case rightfully its—whether by removal or direct party circumvention—likewise "encroaches on" state jurisdiction and disrespects "the interest[s] of comity and federalism." *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). Analogous fears regarding judicial economy and potential future reversal on appeal also are informative. *See Breymann v. Pa., O. & D.R. Co.*, 38 F.2d 209, 212 (6th Cir. 1930).

gambit. That it desires more now, with trial mere weeks away, rings hollow, to the Court. If 1.5 years of discovery did not reveal proof that would bless EQT's invocation of the Court's diversity jurisdiction, the Court sees (and EQT identifies) "no reasonable basis to expect that further discovery would." *Id.*; *see also Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991) (same holding for a 5.5-month discovery period). EQT unquestionably had "an opportunity to secure and present relevant evidence to the existence of jurisdiction." *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir. 2005). Defendants specifically denied Keller's citizenship and denied the existence of subject-matter jurisdiction. DE #6, at ¶¶ 3-4. All averments as to jurisdiction were faulty and inadequate from day one, and Plaintiff should have attended to them long ago.

For these cascading reasons, the Court concludes that it lacks subject-matter (diversity) jurisdiction in this case. Accordingly, the Court **DISMISSES** the case, without prejudice, *see Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1244 (2006); *Ernst v. Rising*, 427 F.3d 351, 366-67 (6th Cir. 2005); DE #101, at 3 (requesting dismissal without prejudice), and will enter a separate Judgment.

This the 26th day of December, 2018.

Signed By:
*Robert E. Wier* REW
United States District Judge